IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GREGORY BRENT CHRISTIAN,

        Petitioner,

v.                                      CIVIL  ACTION  NO.  3:05-0879

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

        Respondent.

MEMORANDUM OPINION AND ORDER

Pending before the Court are Petitioner Gregory Brent Christian's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 39); Respondent's motion for summary judgment (ECF No. 54); Petitioner's cross-motion for summary judgment (ECF No. 60); and two discovery motions filed by Petitioner (ECF Nos. 58 and 59).  This petition was referred to U.S. Magistrate Judge Cheryl A. Eifert for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  The magistrate judge entered proposed findings and recommendations ("PF&R") (ECF No. 78) and Petitioner has filed objections thereto (ECF No. 79).  For the following reasons, the Court **ADOPTS** the PF&R, as modified, and **DENIES** Christian's petition.

I.        BACKGROUND

A.    **Factual Background and Procedural History**

On September 2, 2003, Christian pleaded guilty in the Circuit Court of Cabell County, West Virginia, to two counts of first-degree robbery and one count of malicious assault on a

police officer.  Resp't's Mot. Summ. J. Ex. 2, ECF No. 54-1.  These charges stemmed from the armed robbery of a Pizza Hut restaurant and a Marathon gas station in Huntington, West Virginia, which occurred in early June 2002.  When investigating officers arrived at the residence where Christian was located, Christian and the police officers exchanged gunshots. One of Christian's shots struck Officer Joe Combs, of the Huntington Police Department. Christian was then taken into custody.  Before accepting Christian's guilty plea, the circuit judge made several findings, including that Christian "is totally satisfied with the representations and advice he has received from [ ] counsel" and that Christian understood his constitutional rights. *Id.* at 2-3.  Christian was sentenced to 25 years' imprisonment on the robbery counts, to run concurrently with each other but consecutively to a federal sentence, and three to fifteen years on the malicious assault count, to run consecutively to all other terms of imprisonment.  *Id.* at 3-4.

On November 4, 2005, Christian filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in this Court.  ECF No. 2.  U.S. Magistrate Judge Maurice G. Taylor, Jr. recommended that the petition be denied without prejudice and that the action be placed on the inactive docket pending exhaustion of state remedies.[1]  ECF No. 33.  This Court adopted the magistrate's recommendations on July 11, 2007, and ordered Christian to file a habeas petition in the Circuit Court of Cabell County within thirty days.  ECF No. 35.

Christian filed a habeas petition in the Circuit Court of Cabell County on July 6, 2007.[2] Resp't's Mot. Summ. J. Ex. 4, ECF No. 54-1.  He amended his petition on April 1, 2008.  *Id.* Ex.

---

[1] Christian filed three habeas petitions with the Supreme Court of Appeals of West Virginia, on October 6, 2003, May 26, 2004, and February 18, 2005.  *See* Resp't's Mot. Summ J. Ex. 3, ECF No. 54-1.  Because these petitions were summarily refused, the exhaustion requirement was not satisfied.  *See* ECF No. 33 at 1 n.2.

[2] Christian evidently filed the petition after seeing the magistrate's proposed findings and before this Court formally adopted them.

5, ECF No. 54-2.  After conducting an omnibus hearing, the circuit court entered a 22-page order denying Christian's petition on February 11, 2011.  *Id.* Ex. 7, ECF No. 54-4.  Christian appealed to the Supreme Court of Appeals of West Virginia, which affirmed the circuit court's ruling on June 29, 2012.  *Id.* Ex. 10, ECF No. 54-4.  On July 12, 2012, Christian renewed his federal habeas petition and filed a motion to lift the stay and abeyance order previously entered in that case.[3]  ECF Nos. 39, 40, 41.  Christian's motion to lift the stay was granted and Respondent was ordered to answer the petition within thirty days.  ECF No. 38.  Thereafter, both parties moved for summary judgment.  ECF No. 54 (Respondent's motion); ECF No. 60 (Petitioner's motion).

Christian's petition identifies four grounds[4] for relief.  First, Christian claims he received ineffective assistance of counsel.  According to Christian, his trial counsel refused to investigate Christian's claims of innocence; failed to file certain pretrial motions; and induced Christian to plead guilty by coercion.  Second, Christian claims prosecutorial misconduct, alleging that the prosecution withheld exculpatory and impeachment evidence.  Such evidence included witness statements and ballistics reports allegedly proving that the bullet that struck Officer Combs was fired from his partner's weapon.  Third, Christian claims that his guilty plea was not knowing and voluntary because he was coerced into pleading guilty by promises that upon such a plea, he would be transferred out of a local jail where he alleged he suffered abuse at the hands of correctional officers.  Fourth, Christian claims that he is actually innocent of the crimes to which he pleaded guilty.  According to Christian, the evidence shows that two other individuals

---

[3] Christian's renewed petition was assigned a new case number, 3:12-cv-03084.  Upon granting Christian's motion to lift the stay, the magistrate judge ordered that the case proceed under the case number 3:05-cv-00879, and that the new case number be terminated.  ECF No. 38.

[4] The petition enumerates three grounds for relief, but the magistrate judge, affording the petition the liberal construction required for *pro se* petitions, identified four grounds.

3

committed the armed robberies, and that Officer Combs was actually shot by his partner, rather than by Christian.

**B.      The Magistrate Judge's Proposed Findings and Recommendations**

The magistrate judge issued detailed proposed findings and recommendations, which thoroughly analyzed each of Christian's claims.  ECF No. 78.  The magistrate judge first found that Christian failed to satisfy the requisite legal standard to prevail regarding each of the following alleged deficiencies in trial counsel's representation: (1) failure to notify the trial court of a conflict; (2) failure to investigate exculpatory evidence related to both the robberies and the malicious wounding; (3) failure to file pretrial motions; (4) rendering incorrect legal advice regarding the applicability of recidivist laws to Christian's potential sentence; and (5) the collective impact of these alleged errors amounted to an egregious case of ineffective assistance.

Next, the magistrate judge addressed Christian's claim of prosecutorial misconduct.  The magistrate judge concurred with the state habeas court's finding that Christian "failed to establish [that] any particular evidence was allegedly suppressed or not disclosed by law enforcement" and "failed to establish by a preponderance of the evidence that the prosecutor's office failed to disclose or suppressed any evidence."  ECF No. 78 at 40 (quoting Order Denying Pet. for Habeas Corpus, at 12 (Cir. Ct. Cabell Cnty. Feb. 11, 2011), Ex. 7, ECF No. 54-4).  The magistrate judge found that the evidence Christian claims was wrongfully withheld was either immaterial or not exculpatory.  Consequently, the magistrate judge concluded that the state habeas court did not err in finding that Christian failed to establish that the State withheld or suppressed evidence in violation of its *Brady* obligations.

The magistrate judge rejected each of Christian's five grounds upon which he argued that his guilty plea was unknowing and involuntary.  The magistrate found that: (1) Christian was

adequately advised of the constitutional rights he waived by pleading guilty; (2) the prosecutor's alleged statements to Christian outside the presence of his attorney did not prejudice him, nor render the guilty plea involuntary; (3) Christian was not incorrectly advised on the applicability of the element of malice in the malicious wounding charge; (4) it was not unreasonable for the state court to reject Christian's claim that his guilty plea was coerced by abuse he suffered in prison, especially in light of Christian's sworn testimony at the plea hearing and the limited evidence he produced in support of his claim; and (5) the state court did not err in its duty to consider the totality of circumstances in assessing the voluntariness of Christian's guilty plea. Finally, the magistrate judge found that Christian's claims of actual innocence do not constitute a valid basis for habeas relief.

Accordingly, the magistrate judge recommended that Christian's petition and his motion for summary judgment be denied and Respondent's motion for summary judgment be granted. Additionally, the magistrate recommended that Christian's discovery motions be denied and that the entire action be dismissed with prejudice. Christian has filed objections to portions of the PF&R. The Court now turns to those objections.

## II.    ANALYSIS

### A.    Legal Standards

This Court conducts a *de novo* review of those portions of the magistrate judge's proposed findings and recommendations to which Petitioner objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). The Court, however, is not required to review, under a *de novo* or any other

5

standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

The instant petition is before the Court pursuant to 28 U.S.C. § 2254. That statute authorizes a federal district court to entertain an application for a writ of habeas corpus from a person in custody pursuant to a state court judgment, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to a claim that was adjudicated on the merits in state court proceedings, an application shall not be granted unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). A state court is not required to explain its reasons in a written opinion; even a summary ruling constitutes an adjudication on the merits so long as it is a "decision" which results from an "adjudication." *Id.* at 784. A state court decision is contrary to U.S. Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "A state court unreasonably applies federal law when it 'identifies the correct governing legal rule from th[e]

6

Court's cases but unreasonably applies it to the facts of the particular . . . case.'" *Lewis v. Wheeler*, 609 F.3d 291, 300-01 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 407). The state court's determination of a factual issue is presumed correct; the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In this case, the state court denied Christian's petition for the writ after an adjudication on the same claims Christian presents to this Court.[5] *See Christian v. Waid*, No. 07-C-572, 2012 WL 3045680 (W. Va. June 29, 2012). Accordingly, this Court's review of the petition is limited to the reasonableness of the state court's determination. Mere disagreement with the state court's decision, therefore, is not a sufficient basis to grant the requested relief. A federal habeas court may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams,* 529 U.S. at 411. Thus, this Court's review is "highly deferential," as mandated by 28 U.S.C. § 2254(d). *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

Both parties have moved for summary judgment. To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the

---

[5] Christian filed an addendum in support of his § 2254 petition that, according to him, "is an identical copy" of the brief Christian filed in the Supreme Court of Appeals of West Virginia, in support of his state habeas petition. ECF No. 40.

nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**B.     Christian's Objections**

Christian, acting *pro se*, timely filed objections to the PF&R.  Christian objects to the magistrate's findings regarding only one of his stated grounds for relief: ineffective assistance of counsel.  Christian's objections to certain portions of the PF&R are specific and the Court will therefore review those portions *de novo*.  The Court need not review the magistrate's findings on the remaining grounds, to which Christian does not object.

Petitioner argues that his attorney's performance during plea negotiations fell below the constitutional standard for effective assistance. *See Strickland*, 466 U.S. 668, 686 (1984).   The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  If an attorney's performance falls below a certain minimum level of professional competence, it may violate an accused's right to effective representation. *See Strickland*, 466 U.S. at 685.

The Supreme Court continues to endorse the familiar two-part *Strickland* test for determining when an attorney's performance violates an individual's Sixth Amendment right to effective representation. *See id.* at 687. The first prong of *Strickland* requires the petitioner to show that his attorney committed an error that fell below a reasonable standard for professional competence. *See id.* The reasonableness standard is an objective inquiry, which contemplates a wide range of acceptable and professional representation. *Id.* at 689. The second prong of the test requires the petitioner to show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To establish prejudice where the petitioner entered a guilty plea, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In all cases, however, "[j]udicial scrutiny of counsel's performance must be highly deferential" and courts must try to avoid retrospectively critical evaluations of counsel's decisions. *Strickland*, 466 U.S. at 689.

In § 2254 proceedings, the inquiry is even less exacting, as the federal court need only inquire as to whether the state court's application of *Strickland* to the facts was objectively unreasonable. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788. "The standards created by *Strickland* and § 2254(d) are both highly deferential," and "when the two apply in tandem, review is doubly so." *Id.* (citations omitted). Federal habeas courts must bear this important distinction in mind when reviewing a § 2254 petition. *See id.* The federal habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786.  Christian enumerated several objections to the magistrate judge's findings.  The Court will address each in turn.

### 1. Counsel's advice regarding applicability of the recidivist laws

Christian claims that trial counsel misadvised him regarding the applicability of the state's recidivist laws to any sentence he may receive.  According to Christian, he told his counsel on the day of the plea hearing that instead of pleading to all charges in the indictment, he desired to plead guilty only to malicious assault of a police officer.  Counsel advised him that if Christian did not plead to all counts in the indictment, as the parties had contemplated when negotiating the plea agreement, the state could seek to enhance his sentence under West Virginia's recidivist statute.[6]  ECF No. 40 at 46.  Christian believed that he would therefore be subject to a mandatory life sentence, ECF No. 40 at 46, and relied on counsel's advice in making the decision to plead guilty to all charges against him, as he originally planned.  Christian now claims that the recidivist statute would not have applied to enhance his sentence, and he would not have pleaded guilty to all charges absent counsel's erroneous advice.  He claims that counsel rendered ineffective assistance by failing to investigate his criminal history to learn the circumstances of his previous convictions and whether they would in fact qualify him for the recidivist enhancement.  He objects to the magistrate's finding that counsel appropriately advised Christian that the state may seek to enhance his sentence under the recidivist statute and that in any event, Christian did qualify for a life sentence under the recidivist laws.

West Virginia's recidivist statute is codified at W. Va. Code § 61-11-18 and provides that upon a second felony conviction, the court shall "add five years to the time for which the person

---

[6] One of the terms of the plea agreement was that the State would not seek a recidivist enhancement.

is or otherwise be sentenced," or if the court imposes an indeterminate sentence, it shall impose a minimum that is twice the number of years otherwise provided for under such sentence.  W. Va. Code § 61-11-18(a).  For a third felony offense, "the person shall be sentenced to be confined in the state correctional facility for life."  *Id.* § 61-11-18(c).  For purposes of applicable convictions, when two felony convictions are returned on the same day, West Virginia courts consider them "as a single prior felony conviction within the meaning of the recidivist statute."  *West Virginia ex rel. Hill v. Boles*, 143 S.E.2d 467, 780-81 (W. Va. 1965).

At some point during the course of counsel's representation and before Christian entered the guilty plea, counsel asked Christian whether he had any prior convictions.  Christian "advised his counsel that he had two prior felonies, without any further detail."  ECF No. 40 at 46. Christian was convicted of two felonies on March 5, 1990, in the Circuit Court of Cabell County, West Virginia.[7]  He does not dispute that these convictions, counted as one for purposes of the recidivist statute, would have subjected him to the enhanced penalty specified by § 61-11-18(a). Christian's criminal history includes two additional felonies, but he claims that these do not qualify for the recidivist enhancement.   On or about September 21, 1988, while he was a juvenile, Christian entered a guilty plea to grand larceny in the Circuit Court of Cabell County. The Supreme Court of Appeals, however, granted Christian's petition for a writ of habeas corpus based on that conviction, because the "State confessed error with regard to both relator's transfer to the criminal jurisdiction of the circuit court [from its civil juvenile jurisdiction] and relator's subsequent plea of guilty."  *Greg C. v. Gregory*, 375 S.E.2d 822, 1988 W. Va. LEXIS 246 (W. Va. Dec. 20, 1988).  The matter was reversed and remanded with instructions to the circuit court and there is no evidence that Christian was ever convicted of the charge upon remand to the

---

[7] Christian was previously convicted of burglary, in violation of W. Va. Code § 61-3-11, and grand larceny, in violation of W. Va. Code § 61-3-13.

circuit court.  It appears to the Court, therefore, that this conviction could not have provided a basis for any recidivist enhancement.

The Court also concludes that Christian's federal conviction in case number 3:02-cr-00202 in this district would not have subjected him to the third-strike life imprisonment of Section 61-11-18(c).  In that case, the two-count indictment charged Christian with possession of an unregistered firearm on or about May 27, 2002, and also for possession of a firearm by a convicted felon, on or about June 4, 2002.  This second charge stemmed from the shooting of Officer Combs—the same basis for the state charge of malicious assault of a police officer. Christian entered a guilty plea to the federal charges on February 11, 2003, and was sentenced on May 27, 2003.  Although Christian had already been convicted and sentenced on the federal charges at the time he pleaded guilty to the state charges, both indictments stemmed from acts that were committed nearly simultaneously.

The West Virginia Supreme Court of Appeals has held that before a trial court may impose a more severe sentence under the recidivist statute, the State must prove that "the defendant *committed* the principal offense *after* having been convicted and sentenced once before for the commission of a penitentiary offense."  *West Virginia v. McMannis*, 242 S.E.2d 571, 575 (1978) (emphasis added).  Likewise, before the mandatory life sentence can be imposed for a recidivist, the State must prove that "the prior convictions, except the first offense and conviction, were for offenses committed after each preceding conviction and sentence."  *Id.* Here, Christian committed the state offense after being convicted and sentenced on the March 1990 felonies, which qualified him for the five-year enhancement, but he had not yet been convicted and sentenced on the federal firearms charges at the time he committed the robberies and malicious assault, on or about June 3-4, 2002.  The Court therefore concludes, based on the

record before it, that Christian would not have been subject to the mandatory life sentence required by the recidivist statute.  Accordingly, the Court **GRANTS** Christian's objections to those portions of the PF&R finding that he was eligible for the mandatory life sentence upon conviction of the state charges.

The Court, however, **DENIES** Christian's objection to the magistrate's conclusion that Christian is not entitled to habeas relief on this ground.  It was not an unreasonable interpretation of the facts, nor was it contrary to Supreme Court precedent, for the state court to find that counsel's advice regarding the recidivist enhancement was not constitutionally deficient. Christian admits that counsel asked him whether he had prior felony convictions, to learn of the possible sentences he might face as a result of conviction.  It is also clear that counsel specifically negotiated with the prosecution to have them agree not to pursue any recidivist enhancement.  Although Christian persists that counsel should have investigated further into the two felonies Christian reported to him, his failure to do so at the pretrial stage was not constitutionally deficient under Supreme Court precedent.[8]  The Supreme Court has stated that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying

---

[8] The Supreme Court has ruled upon counsel's duty to investigate a defendant's prior conviction, but in a much different context than the circumstances presented here.  In *Rompilla v. Beard*, 545 U.S. 374 (2005), the Court held that defense counsel's failure to examine the file on a defendant's prior conviction at the sentencing phase of a capital murder trial fell below the level of reasonable performance.  In that case, defense counsel failed to review the prior conviction file despite knowing that the prosecution intended to introduce the defendant's prior conviction in its pursuit of the death penalty, and even after being twice warned by the prosecution that it would use that prior conviction.  The Court found that counsel's performance was not reasonable, especially where a review of the file could lead to the discovery of "any mitigating evidence the Commonwealth would downplay," and allow counsel "to anticipate the details of the aggravating evidence the Commonwealth would emphasize."  *Id.* at 385-86.

a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  Moreover,

"when a defendant has given counsel reason to believe that pursuing certain investigations would

be fruitless or even harmful, counsel's failure to pursue those investigations may not later be

challenged as unreasonable." *Id.*  In this case, counsel's pretrial interview of Christian revealed

that he was eligible for a recidivist sentencing enhancement.  The state habeas court also credited

testimony of trial counsel that Christian admitted to him that Christian had committed the

robberies.[9]  In light of these facts, it was not constitutionally deficient representation for counsel

to choose not to investigate the details of Christian's prior felony convictions, and instead

concentrate his efforts on negotiating a plea in which the State would not seek a recidivist

enhancement.

Moreover, Christian pleaded guilty to the crime, after having been fully apprised of his

rights and the penalties he faced by pleading guilty.  Christian demonstrated his full knowledge

of the consequences of his plea agreement in the questionnaire he completed and signed in state

court.  Questions Relative to Entry of Plea of Guilty, App'x 395-400, ECF No. 39-2.  One of the

questions inquired as to the terms of any plea agreements.  Christian stated that his understanding

of the agreement was that he faced a sentence of 25 years' imprisonment on the robbery counts,

to run concurrently with each other and consecutive to the sentence for his federal offense; and 3

to 15 years' imprisonment on the malicious assault charge, to run consecutive to these other

sentences.  *Id.* at 399.  The state court sentenced Christian precisely in accordance with this

agreement, Ex. 2 at 3-4, ECF No. 54-1; Christian received the exact sentence he anticipated

before entering his guilty plea.

---

[9] For the reasons stated in Part II.B.6, *infra*, the Court does not find that this was an unreasonable
interpretation of the facts as presented in the evidence in the state habeas proceeding.

Accordingly, this Court finds no deficiency in the State habeas adjudication on this claim of ineffective assistance.

### 2.      Counsel's failure to notify the court of a conflict with Christian

Christian next claims that a conflict existed between him and his counsel, of which counsel had an obligation to notify the court.  According to Christian, the conflict was that he wanted to proceed to trial, but his counsel wanted him to enter a guilty plea.  He asserts that counsel's failure to notify the trial court of this disagreement constituted ineffective assistance of counsel.

After a *de novo* review, the Court agrees with the magistrate judge's findings and **DENIES** Christian's objections.  Because the magistrate's analysis was sufficient, the Court will only briefly discuss its reasons here.  Christian correctly recited the rule that "[d]efense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial."  *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980).  That rule, however, does not apply in this case.  The duty described in *Cuyler* applies specifically to attorneys who have a conflict of interest.  *See id.* at 348.  A conflict of interest is some outside interest that may impair the attorney's representation of his client.  For example, a conflict of interest exists if an attorney represents multiple clients and the representation of one will be directly adverse to another, or there is a risk that the lawyer's representation of one will be materially limited by his responsibilities to another.  *See* Am. Bar Ass'n, *Model Rules of Professional Conduct*, Rule 1.7 (2013 ed.).  Additionally, an attorney can have a personal conflict of interest if, for example, he has entered into a business transaction with a client, or has pecuniary or other interests adverse to a client.  *See id.* Rule 1.8.  It is a conflict of

that type that triggers an attorney's obligation to notify the court—not merely a disagreement as to the attorney's strategic decisions.

The core conflict Christian identifies is that he wanted to have a trial, and his counsel allegedly wanted him to plead guilty instead of going to trial.[10]   Testimony elicited at the state omnibus hearing, however, indicates that counsel was well aware of his obligations to prepare the case for trial, if that was the route Christian wished to take.   When asked to confirm that Christian requested him to continue preparing the case for trial "in case an agreement could not be reached by my trial date," counsel replied, "Yes, sir.   I mean, I would have done that anyway."   Omnibus Hr'g Tr. 121-22, Ex. 18, ECF No. 54-7.   Counsel stated that in his experience, "[p]lea negotiations do not affect the way we prepare for a case one iota, because we have clients who sometimes accept the plea agreement . . . and change[] their mind.   So we prepare all cases as if we're going to trial and are prepared on the factual matters."   *Id.* at 122. Counsel also testified that it was Christian's "initial request" for him to "broker a deal with the state whereby [Christian] would receive a concurrent sentence that would discharge at or near the expiration of [his] federal sentence."   *Id.*   It appears to the Court, therefore, that Christian had at one point instructed counsel to pursue plea negotiations, contrary to his claim that the two had an "extreme" conflict regarding how to proceed.

The Court therefore concludes that the state court's decision on this matter was not contrary to Supreme Court precedent, nor did it result from an unreasonable interpretation of the facts.

---

[10] Christian identified one potential conflict of interest in his amended petition: during counsel's representation, Christian made numerous written and verbal complaints to various agencies regarding counsel's alleged deficient representation.   ECF No. 40 at 21-22.   The magistrate judge analyzed this claim, as well.   Christian, however, objects that the magistrate did not focus on the "most egregious" conflict: his wanting to go to trial and counsel's alleged desire for him to plead guilty.   ECF No. 79 at 12.

### 3.      Counsel's failure to investigate exculpatory evidence[11]

Christian claims that counsel provided ineffective assistance by failing to independently investigate the case before advising Christian to plead guilty.  Christian claims that such an investigation would have revealed that another person actually committed the robberies.  As to the malicious assault charge, Christian contends that the forensic evidence demonstrates that Officer Combs was struck by a bullet fired by his partner, not Christian.  He faults counsel for failing to seek any ballistics report or other forensic evidence to prove this theory of his innocence.  The state habeas court found that counsel's "decision not to investigate statements and evidence was . . . not ineffective assistance, especially in light of Petitioner's statement that he had committed the crimes alleged."  ECF No. 39 at 19.  Upon review, this Court agrees with the magistrate's conclusion that this determination was not unreasonable or contrary to federal law.

As stated *supra*, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  Moreover, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."  *Id.*  Once counsel "conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'"  *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quoting *Strickland*, 466

---

[11] Christian separately objects to "counsel's failure to investigate the robberies and malicious assault charges" and also his alleged "failure to investigate alternative suspect evidence."  ECF No. 79, Parts III.3 and III.4.  Because both objections concern counsel's alleged failure to investigate exculpatory evidence, the Court addresses these objections together.

U.S. at 688). To prevail on such a claim, a petitioner must specify "what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify." *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990).

### a. Malicious assault charge

The Court concurs with the magistrate judge's findings that counsel did not render ineffective assistance for failure to investigate Christian's alternative theory of the shooting of Officer Combs. Christian's objections are **DENIED**. Because the magistrate's reasons and citations to the record are well stated, the Court incorporates that portion of the PF&R and need not restate the analysis here. In brief summary, the Court observes that there was sufficient evidence from which counsel could have reasonably believed that pursuing Christian's alternative theory would be fruitless. Counsel testified at the omnibus hearing that Christian admitted to shooting Officer Combs, although he claimed he did not know he was a police officer. Omnibus Hr'g Tr. 97-98, ECF No. 54-7. Additionally, the forensic reports of both the Huntington Police Department and the FBI identify the bullet that struck Officer Combs as a smaller .32 caliber bullet, rather than the larger .40 caliber rounds used by HPD.[12] *See* Ex. 5, ECF No. 54-3 at 5-6 (police report describing how many rounds Officer Combs fired and how many .40 caliber spent casings were recovered); Property Inventory, July 3, 2002, Ex. 19, ECF No. 54-9 at 3 (identifying the bullet recovered from Officer Combs as a .32 caliber). Christian has presented no evidence to rebut these forensic reports or to otherwise challenge their veracity. Consequently, counsel's failure to further investigate this theory was not unreasonable, especially where the forensic reports that already existed did not support the highly speculative theory.

---

[12] The weapon officers seized from Christian was a .32 caliber. Ex. 5, ECF No. 54-3 at 8.

### b. Robbery charges

The Court also agrees with the magistrate judge's finding no fault with the state habeas court's determination that counsel did not render ineffective assistance for failing to investigate possible alternative suspects for the robberies. The Court incorporates that discussion in the PF&R here and **DENIES** Christian's objections. First, Christian claims that after he entered a guilty plea and was sentenced, he heard from other prisoners that another man, Joshua Deitz, had admitted to committing the robberies. Deitz allegedly wrote Christian a letter himself confessing. Appendix 238, ECF No. 39-1. However, the Court is not "at liberty to rely on hindsight to reconstruct the circumstances of counsel's conduct." *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012). Counsel's investigation would not have revealed this confession, which occurred years after Christian pleaded guilty.

Second, Christian claims that he did discuss other potentially exculpatory evidence with counsel before he entered his guilty plea. ECF No. 40 at 38-40. This evidence included statements by the friend of the victim of the Marathon station robbery indicating that the victim did not recognize Christian as the person who committed the robbery. The state habeas court nonetheless found no constitutional deficiency with counsel's representation for failing to pursue this lead by interviewing this witness or any others. Counsel testified that he did not pursue an investigation into possible alternative suspects of the robberies because Christian admitted to him that he had committed the robberies. Omnibus Hr'g Tr. 85, Ex. 18, ECF No. 54-7 (counsel responded to Christian's question, "based on you telling me that you had done the particular robberies, no, I had not interviewed the witnesses"). Christian claims that he never made such an admission, which the Court addresses at Part II.B.7, *infra*. Nonetheless, the state habeas court

credited counsel's testimony and denied him relief on this ground of his petition. That determination was neither unreasonable nor contrary to law.

### 4. Counsel's failure to file pretrial motions

Christian objects to the magistrate's conclusion that the state habeas court's decision was not unreasonable, or contrary to law, in determining that trial counsel did not provide ineffective assistance by failing to file several pretrial motions. Christian maintains that counsel should have filed certain motions before trial, including motions to suppress, motions to compel disclosure of evidence, and a motion to change venue, due to pretrial publicity. The Court **DENIES** Christian's objection.

"The choice and litigation of pretrial motions in a criminal case are strategic and tactical decisions which should be made by defense counsel after consultation with the client." *Dumas v. United States*, 5:07-cv-00795, 2009 WL 1073697, at *9 (S.D. W. Va. Feb. 3, 2009) *report and recommendation adopted as modified,* 5:07-cv-00795, 2009 WL 1073695 (S.D. W. Va. Apr. 20, 2009) *aff'd in part, dismissed in part,* 355 Fed. App'x 754 (4th Cir. 2009) (citing *ABA Standards for Criminal Justice,* Defense Function Standard 4-5.2(b)). The petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citations omitted). Strategic decisions are insulated from challenge for ineffective assistance. *Flippo v. McBridge*, 393 Fed. App'x 93, 93 (4th Cir. 2010) (citing *Powell*, 562 F.3d at 670).

The state court concluded that trial counsel's decision to delay filing any pretrial motions until shortly before trial was a strategic decision. The Court notes that Christian does not claim that his counsel failed to file any of the pretrial motions due to ignorance of any facts that could

support such motions; he argues instead that counsel failed to file them before he consummated the plea agreement. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (counsel's failure to file a timely suppression motion was unreasonable where the failure was "not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce [certain evidence]," because he had conducted no pretrial discovery). Counsel testified that he indeed discussed the types of motions that he would file on behalf of Christian if Christian chose to proceed to trial. The primary reasons he did not file motions well in advance of trial were twofold. First, counsel believed that it was the practice of the presiding judge to entertain such motions in the days before trial, rather than months in advance. Second, counsel—at Christian's direction—was involved in plea negotiations at the time. He testified that he chose not to file any pretrial motions while negotiations were ongoing, because there was a risk that the court could issue an adverse ruling which would negatively impact their negotiating position. Omnibus Hr'g Tr. 83-85, ECF No. 54-7.

Christian has not demonstrated by clear and convincing evidence that the state court's determination of facts was incorrect. The Court cannot conclude that the state court's decision was based on an unreasonable determination of the facts. Counsel's determination of when to file the pretrial motions was a matter of strategy. Although Christian now protests that strategy, it was not unreasonable, nor contrary to law, for the state court to find that Christian is not entitled to habeas relief on this ground. Accordingly, the objection to this portion of the PF&R is **DENIED**.

### 5.   The collective impact of counsel's errors and discovery motions

Three of the four objections identified under the heading "Collective Impact of Counsel's Errors and Final Analysis," *see* ECF No. 79 at 20, are essentially objections to the magistrate's

ultimate conclusion that Christian is not entitled to the habeas relief he seeks.  Because the Court

has already addressed each of the magistrate's findings that support the ultimate conclusions to

which Christian objects, it is unnecessary to further address these objections.

The fourth objection under this heading, however, raises a specific objection to the

magistrate's decision to resolve Christian's petition without an evidentiary hearing and without

allowing Christian to seek additional discovery to support his petition.  The Court **DENIES** this

objection.  Unlike other civil litigants, a § 2254 habeas petitioner "is not entitled to discovery as

a matter of ordinary course."  *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (quoting

*Bracy v. Gramley,* 520 U.S. 899, 904 (1997)).  Instead, he must "show good cause before he is

afforded an opportunity for discovery." *Id.* (quoting *Quesinberry v. Taylor,* 162 F.3d 273, 279

(4th Cir. 1998)).  "A showing of good cause must include specific allegations suggesting that the

petitioner will be able to demonstrate that he is entitled to habeas corpus relief."  *Id.* (citing

*Bracy,* 520 U.S. at 908-09).  A petitioner must do more than identify the specific information

sought in discovery; he must show how that information is material to the merits of his claim.

*See id.*  Additionally, the habeas statute specifies under what circumstances the federal habeas

court should conduct an evidentiary hearing:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless
> the applicant shows that—
>
> (A)    the claim relies on—
>        (i) a new rule of constitutional law, made retroactive to cases on collateral
>            review by the Supreme Court, that was previously unavailable; or
>        (ii) a factual predicate that could not have been previously discovered
>             through the exercise of due diligence; and
> (B)    the facts underlying the claim would be sufficient to establish by clear and
>        convincing evidence that but for constitutional error, no reasonable
>        factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Christian was sufficiently specific in describing the information he sought in discovery. In his proposed interrogatories and requests for production and admission, he seeks evidence that he claims will exonerate him of the crimes to which he pleaded guilty. ECF No. 58. Specifically, he asks for fingerprint analyses of any prints found in the alleged getaway vehicle, additional information about the photo lineup procedures the police used with witnesses, and various forensic details about the shots that were fired when the police arrested Christian. He also seeks police reports about the robberies, any surveillance footage from the victim businesses, and sketches of the location in the house where the shots were fired. Christian asserts that the requested discovery will also "bolster his claims of ineffective assistance of counsel and prosecutorial misconduct." ECF No. 58 at 6.

Christian failed, however, to demonstrate how any of these pieces of evidence are material to his claims of ineffective assistance of counsel. Instead, it is clear that he hopes to use whatever evidence he receives to relitigate his guilt and support his claims of actual innocence. Actual innocence based on newly discovered evidence is not an independent ground for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Moreover, the state court allowed Christian a full omnibus hearing on his habeas petition, during which he acted *pro se* and, very ably, examined witnesses. Because Christian has failed to show good cause for his discovery requests, and because he has failed to satisfy the standard for granting an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2), the Court **DENIES** his objection. The Court agrees with the magistrate's analysis and concludes that the state habeas court's decision on this ground was not contrary to law, nor was it an unreasonable interpretation of the facts.

6.      **Christian's alleged admission to counsel**

Finally, Christian disputes the magistrate judge's deference to the state court's factual finding that Christian admitted to his counsel that he had committed the robberies.  Christian claims that the state court and the magistrate judge misconstrue trial counsel's actual testimony and take it "out of context."  ECF No. 79 at 23.

The state court's determination of a factual issue is presumed correct; the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Credibility determinations are factual determinations. *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003), *opinion amended on denial of reh'g,* 357 F.3d 461 (4th Cir. 2004).  "As such, they 'are presumed to be correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.'"  *Id.* (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citations omitted)).  Christian has not demonstrated by clear and convincing evidence that the state court erred in crediting counsel's testimony.  The state court was entitled to find credible counsel's testimony that Christian admitted committing the robberies, especially in light of counsel's testimony and counsel's actions while representing Christian.

Moreover, the fact that Christian pleaded guilty to these crimes further supports the state court's credibility determination.  As discussed *supra*, Christian entered a plea of guilty after fully acknowledging an understanding of the consequences of such a plea, specifically the imprisonment consequences.  All of this evidence supports the state court's determination that Christian admitted his guilt to counsel, just as he admitted his guilt to the state court by pleading guilty.  Accordingly, the Court **DENIES** this objection.

## C.    Certificate of Appealability

The court additionally has considered whether to grant a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El*, 537 U.S. at 336-38; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  The Court **GRANTS** Christian a certificate of appealability on this limited ground: whether counsel rendered ineffective assistance in advising Christian of the applicability of West Virginia's recidivist law to his case.

## III.    CONCLUSION

Section 2254(d) requires a highly deferential review of the state habeas court's determination.   Applying the appropriate legal standards, the Court concludes that Christian has not met his burden, especially in light of that high deference.  The fact remains that Christian appeared in court and, after a full hearing, entered a guilty plea to all charges in the indictment. The sentence he received conformed exactly to the sentence he anticipated receiving pursuant to the agreement.  Christian now claims that he is unconstitutionally detained.  The Court disagrees and concludes that the state habeas court's denial of the writ was not unreasonable or contrary to law.  The Court further observes that Christian has quite ably represented himself in this habeas proceeding and before the state habeas court,[13] even skillfully examining witnesses at the omnibus hearing.  His submissions to the Court have been well-organized and well-argued.  He has not demonstrated, however, that he is entitled to relief.

---

[13] Christian was appointed co-counsel who assisted in his representation before the state court.

Accordingly, the Court **ADOPTS** the magistrate judge's PF&R, as modified.  Christian's objection to the finding that the West Virginia recidivist penalty would have applied to him is **GRANTED**; all other objections are **DENIED**.  The Court **ORDERS**:

1. Respondent's motion for summary judgment, ECF No. 54, is **GRANTED**;

2. Christian's motion for summary judgment, ECF No. 60, is **DENIED**;

3. Christian's petition for a writ of habeas corpus, ECF No. 39, is **DENIED**;

4. Christian's motion to engage in discovery, ECF No. 58, is **DENIED**;

5. Christian's motion for production of telephone recordings, ECF No. 59, is **DENIED**;

6. The Court **ISSUES** a certificate of appealability on the narrow issue of whether counsel rendered ineffective assistance in advising Christian regarding the applicability of the recidivist statute to his case; and

7. This action is **DISMISSED**, **with prejudice**, and shall be stricken from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        August 8, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE